

**SEALED**

**FILED**
JUL 2 4 2023
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) UNITED STATES OF AMERICA,

    Plaintiff,

v.

(1) ASSURED COLLECTIONS LLC, an Oklahoma Limited Liability Company;
(2) ASSURED FINANCIAL LLC, an Oklahoma Limited Liability Company;
(3) CHRISTOPHER PARKS, an individual;
(4) CHRISTOPHER NOAH PARKS, an individual;
(5) STEPHEN MILLER, an individual,

    Defendants.

23 CV 0 3 1 3 GKF - CDL

Case No.

**FILED UNDER SEAL**

### The United States of America's Complaint

The United States of America, by and through its undersigned attorneys, complains against the Defendants as follows:

1.     The United States brings this action for an *ex parte* temporary restraining order, preliminary and permanent injunctions, and other equitable relief under 18 U.S.C. § 1345, to enjoin Defendants' ongoing commission of a criminal fraud and false-statements scheme where they fraudulently and unfairly attempt to collect nonexistent and or otherwise invalid consumer debts related to the sale of medical

1

devices, in violation of 18 U.S.C. §§ 1035, 1341, 1343. The United States seeks to prevent continuing and substantial injury to the victims of this fraud.

2.     Since at least 2022, and continuing until the present, Defendant Christopher Parks—a healthcare fraud felon who is pending sentencing after pleading guilty to one federal healthcare fraud indictment, and is currently awaiting trial on another federal healthcare fraud indictment—has been running a collections scheme from prison, and misappropriating medical billing information he acquired as part of his past fraudulent business activities. Using that data, Defendants have sent thousands of fraudulent collection notices on Assured Collections letterhead to consumers nationwide, demanding (in many instances) thousands of dollars in payment for medical devices those consumers may or may not have acquired in relation to years-ago medical treatments.

3.     The collection notices, and the scheme, are fraudulent for multiple reasons. Chief among those reasons is that the debts in question do not exist, because the patients do not owe any money to the companies that actually provided the medical devices. Second, even if the patients owed money to anyone for the devices in question, they would not owe the money to the Defendants, because the Defendants did not sell the devices to the patients and do not own the "debt." Furthermore, in numerous instances, Defendants have sent collection notices to consumers who did not receive or agree to receive any medical devices at all. Defendants are aware of all of these facts, but continue to harass and defraud consumers anyway.

4. For the reasons stated herein, the United States requests injunctive relief pursuant to 18 U.S.C. § 1345 to enjoin Defendants' scheme to defraud using the mail and wires and to make false statements in violation of 18 U.S.C. §§ 1035, 1341, 1343.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331, 1345.

6. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff is the United States of America.

8. Defendant Assured Collections LLC is, and was at all times relevant to this action, a limited liability company organized and existing under the laws of the State of Oklahoma, whose registered business address is 8660 S. Peoria Ave., Tulsa, OK 74132. In connection with the matters described herein, Assured Collections LLC transacts or has transacted business in the Northern District of Oklahoma and throughout the United States.

9. Defendant Assured Financial LLC is, and was at all times relevant to this action, a limited liability company organized and existing under the laws of the State of Oklahoma, whose registered business address is 8660 S. Peoria Ave., Tulsa, OK 74132. In connection with the matters described herein, Assured Financial LLC transacts or has transacted business in the Northern District of Oklahoma and throughout the United States.

10. Defendant Christopher Parks ("Parks") exercises control over the business operations of Assured Collections LLC and Assured Financial LLC. Christopher Parks is a former attorney who gave up his bar license in 1998 as a result of pending grievances against him, one of which related to false statements he allegedly made involving a healthcare matter. Parks is currently a resident of Cimarron Correctional Facility in Cushing, Oklahoma, and in connection with the matters alleged herein, he transacts or has transacted business in the Northern District of Oklahoma and throughout the United States.

11. Defendant Christopher Noah Parks ("Noah Parks") exercises control over the business operations of Assured Collections LLC and Assured Financial LLC. Christopher Noah Parks is a resident of Broken Arrow, Oklahoma, and in connection with the matters alleged herein, he transacts or has transacted business in the Northern District of Oklahoma and throughout the United States.

12. Defendant Stephen Miller exercises control over the business operations of Assured Collections LLC and Assured Financial LLC. Miller is a resident of Broken Arrow, Oklahoma, and in connection with the matters alleged herein, he transacts or has transacted business in the Northern District of Oklahoma and throughout the United States.

**DEFENDANTS' ONGOING FRAUDULENT COLLECTIONS SCHEME**

13. Durable Medical Equipment ("DME") is a category of medical equipment that is defined in the Code of Federal Regulations as equipment that can withstand repeated use, is useful for someone who is sick or injured, can be used in the home,

and is expected to last at least three years. 42 C.F.R. § 414.202. As relevant here, DME encompasses items like leg-compression devices that are sometimes given to patients in order to prevent the development of blood clots.

14. Defendants have significant experience in the financial aspects of the healthcare industry, and Defendant Parks controls or controlled multiple business entities that engage in healthcare billing. These entities bill both private insurance companies (like Aetna and Blue Cross Blue Shield) and federal healthcare benefit programs (like Medicare, CHAMPVA, and TRICARE).

15. Starting at least as early as 2017, Parks and others, working together as a group of companies known as "USA Medical," contracted with DME companies as clients in order to bill insurance companies for those companies' devices that were purported to be provided to patients.

16. USA Medical entered into agreements with companies who provided and purported to provide DME to patients throughout the country. At least four such DME companies that contracted with USA Medical are relevant to this action: CBD Skeletal ("CBD"), BRR Medical Supply ("BRR"), Orthopedic Therapy Services ("OTS"), and REM Medical Solutions ("REM").

17. The contracts that these companies signed with USA Medical are nearly identical in relevant respects and allow USA Medical only to "process and file . . . medical insurance claims for durable medical equipment." Under the contracts, USA Medical was to receive a percentage of the insurance payout, usually fifteen or

twenty percent, in exchange for its services. The contract does not give USA Medical or any other entity the right to send collection notices to patients.

18. At some point at least as early as mid-2022, patients who had obtained DME in years-old procedures began receiving aggressive collection notices from Assured asserting that they owed significant amounts of money for the DME they purportedly obtained. In all of these instances where people have received Assured collection notices, billing for the procedures was handled by USA Medical or a Christopher Parks-associated entity in the past. Most of the procedures occurred in the 2017 to 2021 timeframe, with the earliest known procedure being July 2017 and the latest being February 2021. These fraudulent collection notices continued to be sent from Assured.

19. The collection notices are misleading and fraudulent in many material respects—and contain materially false statements in connection with the delivery of or payment for healthcare benefits and items, and frequently in matters involving a federal healthcare benefit program—for the following reasons:

    a. First, neither Assured, nor any other Parks-associated entity has the right to collect the claims in question. Parks controlled USA Medical, which submitted the DME companies' original bills to insurers, but neither Assured, nor any other Parks-controlled entity was generally authorized to bill patients for these claims—and they were also not allowed to collect them years later.

b. Second, the collection notices attempt to collect many debts that do not in fact exist. Many patients did sign paperwork agreeing to acquire DME devices at the time of their treatments and acknowledging that they were financially responsible for the devices; however, the DME companies, which are the companies that actually provided the devices in question, specifically chose not to bill the patients for outstanding balances and these patients to owe them any money. Nor is a company generally allowed to send a Medicare, TRICARE, or CHAMPVA patient to collections over purported patient balances for services that were denied as not medically necessary (unless certain conditions not present here have been met).

c. Third, these collection notices are misleading because the debts were never billed to the patients at the time of service at all, meaning that patients are being told that they are in collections for bills that they never had a legitimate chance to pay or challenge in the first instance.

d. Fourth, even if Assured were legally entitled to collect the debts shown in the collection notices (which it is not), Assured has not transmitted money to the DME companies who provided the devices as part of the collection efforts it has undertaken in the past year.

e. Fifth, even if everything else about the collection notices were legal (which it is not), the collection notices contain misleading or false information because they state that patients owe money not to

companies that provided the DME and on whose behalf USA Medical billed public and private insurers, but to Parks-controlled pass-through billing entities such as Philcare.

20. Consumers have filed hundreds of complaints to the Better Business Bureau, Federal Trade Commission, Consumer Protection Bureau, and to State Attorneys General's Offices. Many of the consumer victims of this fraud scheme are senior citizens and/or veterans, and many of them paid the purported balance due in order to avoid trouble. Here are several examples of patients who received fraudulent Assured collections notices:

   a. L.K., a Medicare and Blue Cross Blue Shield Federal insurance beneficiary from Fraser, Michigan, was sent a fraudulent collection notice demanding $2,995 in 2023, from a surgery performed in 2020. The collection notice was fraudulent because (among other things) BRR did not authorize Assured to collect debts on its behalf and did not authorize Assured to bill patients for purportedly unpaid insurance balances. L.K. paid $1,497.50 in order to satisfy the collection notice.

   b. R.J., a Medicare and TRICARE insurance beneficiary from North Charleston, South Carolina, was sent a collection notice demanding $5,995 in 2023, from a surgery performed in 2020. The collection notice was fraudulent because (among other things) CBD did not authorize Assured to collect debts on its behalf and did not authorize Assured to

bill patients for purportedly unpaid insurance balances. CBD told R.J. to disregard the collection notice as fraudulent.

c. J.B., a CHAMPVA beneficiary from Tulsa, Oklahoma, was sent a collection notice demanding $5,995 in 2023, from a surgery performed in 2020. The collection notice was fraudulent because (among other things) OTS did not authorize Assured to collect debts on its behalf and did not authorize Assured to bill patients for purportedly unpaid insurance balances. OTS told J.B. to disregard the collection notice as fraudulent.

d. C.P., a Medicare and TRICARE beneficiary from San Antonio, TX, was sent a collection notice demanding $5,995 in 2023, from a surgery performed in 2020. The collection notice was fraudulent because REM did not authorize Assured to collect debts on its behalf and did not authorize Assured to bill patients for purportedly unpaid insurance balances. REM provided C.P. a letter that he owes no debt and no collections should be sought for the DME device provided by REM.

**DEFENDANTS' INVOLVEMENT IN THE SCHEME**

21.　Assured's corporate paperwork indicates that Miller is the Director of Operations and Certified Regulatory and Compliance Professional. Miller has long worked for his uncle Parks, and was a manager of USA Medical, Parks' previous medical billing company. Miller runs the day-to-day operations of Assured.

22. Recorded phone calls obtained from the facility where Parks is incarcerated show Parks directing significant aspects of Assured's operations from prison. In a recorded call on May 23, 2023, Parks spoke with Miller and directed Miller to solicit businesses as clients for Assured's collection activities. Miller expressed concern to Parks over the number of BBB complaints about Assured and its low BBB rating, as well as the fact that Assured has been accused of "the f word," meaning "fraud." In response, Parks directed Miller to switch names and operate under Assured Financial instead of Assured Collections. When Miller expressed concerns over Assured's payment processor holding payments due to a compliance investigation, Parks directed Miller to obtain another payment processor under the alternate name. Parks stated that it would be easier to change company names than to fight the complaints that consumers had lodged against the company. Other recent recorded calls show Parks directing other aspects of Assured's operations from prison.

23. During a call between Noah Parks, Stephen Miller, and Assured's payment processor on June 13, 2023, Miller stated that he managed the day-to-day business of Assured and Noah Parks stated that he owns Assured. During the same call, Miller and Noah Parks conveyed multiple pieces of false information to the payment processor in an attempt to have the payment processor release funds that were being held due to compliance issues and consumer complaints. For example, in response to a direct question, Noah Parks falsely stated that Parks has no involvement whatsoever in Assured. (Noah Parks subsequently gave a detailed report to Parks on a prison phone call about the payment processor phone call.)

24. Also on the June 13 call with the payment processor, Miller acknowledged that Assured was sending collection notices for purported debts that had never actually been billed to the consumers in the first place. Miller also stated his knowledge that what he called "reps and doctors" had told numerous patients that they would not be responsible for the unpaid balances on denied insurance claims associated with the DME equipment in question. Miller also stated that he was aware of multiple instances in which Assured had sent collection notices for claims in which patients had not even signed off on obtaining the DME equipment in question.

25. Without injunctive relief, the Defendants' actions will continue to harm consumers.

## COUNT I
## (18 U.S.C. § 1345)

26. The United States realleges and incorporates by reference Paragraphs 1 through 32 of this Complaint as though fully set forth herein. By reason of the conduct described herein, Defendants have violated, are violating, and are about to violate 18 U.S.C. § 1035, a federal health care offense, by, in a matter involving a federal health care benefit program: (1) falsifying, concealing, or covering up by any trick, scheme, or device a material fact; or (2) making materially false, fictitious, or fraudulent statements or representations, or making or using any materially false writing or document knowing the same to contain any materially false, fictitious, or

fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services.

27.     By reason of the conduct described herein, Defendants have violated, are violating, and are about to violate 18 U.S.C. § 1341 by executing a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent representation with the intent to defraud, and, in so doing, using the United States mails and/or private or commercial interstate carrier.

28.     By reason of the conduct described herein, Defendants have violated, are violating, and are about to violate 18 U.S.C. § 1343 by executing a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent representation with the intent to defraud, transmitted through wire, radio or television communication in interstate commerce.

29.     Upon a showing that Defendants are committing or about to commit violations of 18 U.S.C. § 1035, the United States is entitled, under 18 U.S.C. § 1345, to: (1) a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining alienation or disposition of any property obtained as a result of the violation; and (2) a restraining order to prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value.

30.     Upon a showing that Defendants are committing or about to commit violations of 18 U.S.C. § 1035, the United States is entitled, under 18 U.S.C. § 1345, to a temporary restraining order, a preliminary injunction, and a permanent

injunction, restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the victims of fraud.

31. Upon a showing that Defendants are committing or about to commit violations of 18 U.S.C. § 1341, the United States is entitled, under 18 U.S.C. § 1345, to a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the victims of fraud.

32. Upon a showing that Defendants are committing or about to commit violations of 18 U.S.C. § 1343, the United States is entitled, under 18 U.S.C. § 1345, to a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the victims of fraud.

33. As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 18 U.S.C. § 1345.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff United States of America requests of the Court the following relief:

(a) A temporary restraining order under 18 U.S.C. § 1345, as follows:

i. Enjoining Defendants, their agents, officers and employees, and all other persons and entities in active concert or participation with them from committing violations of 18 U.S.C. § 1035, a federal health care offense;

ii. Enjoining Defendants, their agents, officers and employees, and all other persons and entities in active concert or participation with them from committing mail fraud, as defined by 18 U.S.C. § 1341;

iii. Enjoining Defendants, their agents, officers and employees, and all other persons and entities in active concert or participation with them from committing wire fraud, as defined by 18 U.S.C. § 1343;

iv. Enjoining Defendants, their agents, officers and employees, and all other persons and entities in active concert or participation with them from attempting to collect or collecting any debt related to any healthcare or medical product or service; or engaging in any billing activity related to any healthcare or medical product or service; or entering into any contracts related to healthcare billing, collections, or claims;

v. Ordering Defendants, their agents, officers, and employees, and all other persons and entities in active concert or participation with them to preserve all business, financial, accounting and other records concerning their collections activities.

(b) A separate temporary restraining order under 18 U.S.C. § 1345 to freeze any assets held by Defendants that might otherwise be used to facilitate their fraudulent business and/or that might be employed to provide restitution for fraud victims. This should include an order restraining and enjoining all persons and entities with direct or indirect control over any Defendants' assets from transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing the assets, including items of physical values, such as vehicles and precious metals gold and silver, cash and accounts with financial institutions, such as banks, brokerage firms, and mutual funds;

(c) A preliminary injunction on the same basis and to the same effect as the temporary restraining orders in sections (a) and (b), *supra*;

(d) A permanent injunction under 18 U.S.C. § 1345 on the same basis and to the same effect except that paragraph (b) *supra* shall be excluded from the final order; and

(e) Such other and further relief as the Court shall deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

The United States hereby demands a jury trial on all claims alleged herein.

Dated this day, the 24th of July, 2023

        Respectfully submitted,

        CLINTON J. JOHNSON
        United States Attorney

        /s/ Marianne Hardcastle
        Marianne Hardcastle, OBA No. 15054
        Assistant United States Attorney
        100 West 7th Street, Suite 300
        Tulsa, Oklahoma 74119
        T: (918) 382-2748 | F: (918) 560-7938
        Email: marianne.hardcastle@usdoj.gov

        BRIAN BOYNTON
        Assistant Attorney General
        Civil Division

        AMANDA LISKAMM
        Director
        Consumer Protection Branch
        Civil Division

        s/ Patrick R. Runkle
        PATRICK R. RUNKLE
        Senior Litigation Counsel, Consumer
        Protection Branch
        United States Department of Justice
        450 5th Street, N.W. Suite 6400S
        Washington, D.C. 20001
        Telephone: (202) 532-4723
        Email: Patrick.R.Runkle@usdoj.gov

        *Counsel for the United States of America*